ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff
MARY CALDWELL,
on behalf of herself and all others
similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY CALDWELL, on behalf of herself and all others similarly situated, | Case No.: 3:19-cv-2861-WHA<br>Assigned to Hon. William H. Alsup<br>Courtroom 12, 19th Floor |
| Plaintiff, | **CLASS ACTION** |
| v. | **FIRST AMENDED COMPLAINT FOR BENEFITS, DETERMINATION OF RIGHTS AND BREACH OF FIDUCIARY DUTY UNDER ERISA** |
| UNITEDHEALTHCARE INSURANCE COMPANY; UNITED HEALTHCARE SERVICES, INC., | |
| Defendants. | |

Plaintiff, Mary Caldwell ("Plaintiff"), on behalf of herself and all others similarly situated, herein sets forth the allegations of her First Amended Complaint against Defendants UnitedHealthcare Insurance Company and United HealthCare Services, Inc.

## INTRODUCTION

1. Defendants UnitedHealthcare Insurance Company and United HealthCare Services, Inc. ("hereinafter "United") is in the business of insuring and/or administering group health plans within the meaning of 29 Code of Federal Regulations § 2560.503-1(m) (both fully insured and self-insured), most of which are employer-sponsored and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Those ERISA-governed group health plans are hereinafter referred to as "United plans."

2. Plaintiff brings this action to address United's practice of improperly denying claims for surgical treatment of lipedema made by patients under United plans. As set forth below, United denies claims for the surgical treatment of lipedema on the basis they are "unproven." Lipedema is a rare condition that is chronic, progressive, painful, and immobilizing. It involves an abnormal buildup of adipose (fat) tissue, usually in the lower body but sometimes in the arms. Often misdiagnosed as obesity or lymphedema, lipedema primarily affects women. Surgical treatment of lipedema is not unproven It is the only available therapy for this condition and has been the subject of various studies that show its beneficial effect.

## JURISDICTION AND VENUE

3. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) as it involves claims by Plaintiff for employee benefits under employee benefit plans regulated and governed by ERISA. Subject matter jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

///

4. The Court has personal jurisdiction over Defendants because ERISA provides for nationwide service of process, and each Defendant has minimum contacts with the United States. 29 U.S.C. § 1132(e)(2).

5. The claims of Plaintiff and the putative class arise out of policies Defendants issued, administered, and/or implemented in this District. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (setting forth special venue rules applicable to ERISA actions).

## THE PARTIES

6. Plaintiff was at all relevant times covered under an employee benefit plan regulated by ERISA and pursuant to which Plaintiff is entitled to health care benefits. Plaintiff resides in Alameda County which is located within this District.

7. United is a corporation with its principal place of business in Minneapolis, Minnesota. United administers and makes benefit determinations related to ERISA health care plans around the country.

## SUBSTANTIVE ALLEGATIONS

**A.     Lipedema.**

8. Lipedema is a rare condition that is chronic, progressive, painful, and immobilizing. It involves an abnormal buildup of adipose (fat) tissue, usually in the lower body but sometimes in the arms. Often misdiagnosed as obesity or lymphedema, lipedema primarily affects women. Symptoms of lipedema include disproportionately large, column-like legs, and disproportionate hips, stomach or buttocks. As lipedema progresses, patients become increasingly heavy in the lower body and expanding fat cells interfere with the pathways of lymphatic vessels. It is estimated that lipedema affects nearly 11% of the adult female population

9. One of the most common misconceptions about patients with lipedema is that they suffer, instead, from lifestyle- or diet-induced obesity. Although some patients with lipedema may also have obesity and although the obesity may influence the lipedema subcutaneous adipose tissue, lipedema is a mutually exclusive diagnosis

2

and should be considered as such. Unlike obesity, the adipocyte hypertrophy and swelling associated with lipedema are resistant to change with diet and exercise or bariatric surgery and caloric restriction.

10. There are four stages of lipedema: Stage 1 in which there is a normal skin surface with enlarged hypodermal adipose tissue; Stage 2 with indentations of the skin and underlying adipose tissue similar to a mattress containing larger mounds of adipose tissue that grow as non-encapsulated masses, lipomas and angiolipomas; Stage 3 where large extrusions of tissue (skin and adipose tissue) cause gross deformations especially on the thighs and around the knees. Lymphedema, where lymph fluid develops dependently on the feet and hands increasing cranially due to dysfunctional lymphatics, can develop during any stage of lipedema, and is called lipolymphedema or Stage 4 lipedema.

11. As lipedema progresses, it causes pain, mobility problems, joint disorders, and other physical problems that prevent patients from engaging in the activities of daily living.

12. The only effective treatment for the pain and immobility caused by lipedema is a specialized form of liposuction. This is different from the techniques used for cosmetic liposuction. During this procedure, a solution is injected into the targeted areas. The solution contains epinephrine to help reduce bleeding, bruising, and swelling and lidocaine as a local anesthetic. The surgeon uses a gentle, vacuum-like instrument to remove excess fat. The removal of this tissue allows patients to gain mobility, reduce or eliminate pain, and lead a productive life.

**B.  United's wrongful denial of lipedema surgery claims.**

13. United plans exclude from coverage those medical services that United considers to be "unproven."

///
///
///

14. "Unproven" is defined in United plans as services:

> [T]hat are determined not to be effective for treatment of the medical condition and/or not to have a beneficial effect on net health outcomes due to insufficient and inadequate clinical evidence from well-conducted randomized controlled trials or cohort studies in the prevailing published peer-reviewed medical literature.

15. United has followed a consistent practice of denying claims for specialized liposuction to treat advanced lipedema in arms, legs, and other body parts on the basis the treatment is "unproven" pursuant to the above-referenced standardized definition.

16. Contrary to United's position, specialized liposuction to treat the symptoms of lipedema is not unproven. It is the only available therapy for this condition and has been the subject of various studies that show its beneficial effect. It is routinely performed at Stanford University Medical Center and other leading medical facilities.

**C.     United's denial of Mary Caldwell's claim.**

17. At all relevant times, Plaintiff Mary Caldwell was covered under a United plan through her husband's employer, Oracle America, Inc ("Oracle").

18. Oracle offered its employees a choice of different medical plans with United. Plaintiff and her husband chose the "United HealthCare Premium PPO Choice Plus Plan."

19. Like all United plans, this plan covers health services to treat illnesses and injuries. It is an ERISA group health plan because it is arranged by Oracle for the benefit of its employees and, *inter alia*, provides payment for the diagnosis, cure, mitigation, treatment, or prevention of disease, or amounts paid for the purpose of affecting any structure or function of the body.

20. Plaintiff's United plan provides that "Covered Health Services (including Prescription Drugs and Mental Health) for all UnitedHealthcare Medical Plans are outlined and described below." It then lists a large number of Covered Health Services

that include both outpatient and inpatient surgery.

**OUTPATIENT SURGERY, DIAGNOSTIC, AND THERAPEUTIC SERVICES**
Covered Health Services received on an Outpatient basis at a Hospital or Alternate Facility including:
Surgery & Related Services
Lab & Radiology/X-Ray
Mammography Testing
Sleep Studies
Other diagnostic tests and therapeutic treatments (including Cancer Chemotherapy and Intravenous Infusion Therapy).

...

**SURGERY, INPATIENT AND OUTPATIENT**
**IMPORTANT**: Prior Authorization is required.
Charges for Inpatient and Outpatient services and supplies furnished in connection with a surgical procedure (including sleep apnea and orthognathic surgeries) performed in the Hospital, Outpatient center or doctor's office. Covered Health Services include services due to a medical condition, which are rendered for illness, injury, or congenital defect.

21. The list of Covered Health Services also includes reconstructive procedures.

**RECONSTRUCTIVE PROCEDURES**
**IMPORTANT**: Prior Authorization is required.
Services are considered reconstructive procedures when a physical impairment exists and the primary purpose of the procedure is to improve or restore physiologic function for an organ or body part. By improving or restoring physiologic function, it is meant that the target organ or body part is made to work better. An example of a reconstructive procedure is surgery on the inside of the nose so that a person's breathing can be improved or restored.

22. The benefits under Plaintiff's United plan are self-insured by Oracle. United, through an administrative services agreement with Oracle, acts as the claims administrator and a fiduciary under Plaintiff's United plan with responsibility for adjudicating claims such as those alleged herein by Plaintiff. Plaintiff's United plan through Oracle provides that:

Medical, dental and vision benefits are paid from Oracle's general assets on a self-insurance basis, including benefits that are paid from a claims administrator's account in order to facilitate administration of the benefit program. UnitedHealthcare's function is to provide administrative and fiduciary services.

23. Pursuant to the foregoing, Plaintiff's United plan provides that:

UnitedHealthcare will pay Network Providers directly for Covered Health Services. If a Network Provider bills You for any Covered Health Service, contact UnitedHealthcare at the number on Your ID card.

24. As alleged herein, Plaintiff was diagnosed with Stage 3 lipedema. Her advanced lipedema has caused her pain, immobility, bruising, and other problems. As her lipedema condition has progressed, her symptoms have become worse and have interfered with her activities of daily living, including the ability to walk for any appreciable distance. Plaintiff's condition has become worse despite the fact that she has followed various conservative measures for treating her disease, including wearing medical-grade compression garments, daily use of a Flexi-Touch lymphatic pump, and receiving manual lymphatic drainage therapy.

25. Plaintiff sought prior authorization (a "pre-service" claim) from United to provide coverage for specialized liposuction to treat her advanced lipedema. Her physician, a plastic surgeon, submitted information to United setting forth Plaintiff's diagnosis and the proposed treatment.

26. On November 28, 2017, pursuant to its administrative agreement with Oracle to administer Plaintiff's United plan and adjudicate claims thereunder, United sent a letter to Plaintiff denying coverage for the proposed surgery stating that "these procedures are not proven to be helpful for people with your condition. Your plan does not cover for unproven services."

27. Plaintiff appealed this decision.

28. On June 1, 2018, pursuant to its administrative agreement with Oracle to administer Plaintiff's United plan and adjudicate claims thereunder, United denied the

appeal. United stated that:

> [T]he clinical information and the peer-reviewed literature do not support the use of the service requested in your type of case. The service requested is an unproven service under the plan.

29. As alleged above, specialized liposuction is a surgical procedure performed to address the functional problems that result from lipedema, an illness covered under the terms of Plaintiff's plan. This surgery is a covered service under Plaintiff's United plan because the plan covers surgical procedures to treat illnesses and injuries, including lipedema. Specialized liposuction is also a covered reconstructive procedure under Plaintiff's United plan because the plan covers such procedures when a physical impairment exists and the primary purpose of the procedure is to improve or restore physiologic function for an organ or body part. Plaintiff requested specialized liposuction for the improvement or restoration of the physiologic function of her legs, not to make herself look better. Specialized liposuction is the only effective treatment for the pain, immobility, bruising, and other problems that result from advanced lipedema. In coming to its "unproven" position, United has ignored the foregoing facts and the clinical evidence and various studies demonstrating that the surgery is effective and necessary for the treatment of the disabling effects of lipedema.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on behalf of herself and all others similarly situated as a class action pursuant to Federal Rules of Civil Procedure Rule 23. Pursuant to Rule 23(b)(1) and (b)(2), Plaintiff seeks certification of the following class:

> All persons covered under ERISA health plans, self-funded or fully insured, that are administered by United and whose claims for specialized liposuction for treatment of their lipedema were denied as unproven.

31. Plaintiff and the class members reserve the right under Federal Rule of Civil Procedure Rule 23(c)(l)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

32. This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because it meets the requirements of Rule 23(a) and Rule 23(b)1 and (b)(2).

### A. Numerosity.

33. The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of individuals covered under United plans who have been similarly affected.

### B. Commonality.

34. Common questions of law and fact exist as to all members of the proposed class.

### C. Typicality.

35. The claims of the named Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly affected by United's wrongful conduct.

### D. Adequacy of representation.

36. Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiff are competent and experienced in litigating large and complex class actions, including class actions against health plans such as United.

### E. Superiority of class action.

37. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practicable, and common questions of law and fact exist as to all class members.

38. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties

and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### F. Rule 23(b) requirements.

39. Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for United.

40. Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

41. United has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**FIRST CLAIM FOR RELIEF**
**DENIAL OF PLAN BENEFITS AND FOR CLARIFICATION OF RIGHTS UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(1)(B)]**

42. Plaintiff and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

43. 29 U.S.C. § 1132(a)(1)(B) entitles Plaintiff to recover benefits due and to enforce and clarify her rights to the benefits at issue.

44. As alleged herein, Plaintiff's United plan covers surgery to treat illness and injury. It also covers surgery to address functional problems resulting from illness and injury.

45. As set forth above, United has followed a practice of denying claims for specialized liposuction for the treatment of lipedema on the basis the treatment is unproven and excluded from coverage.

46. Pursuant to its practice, United denied Plaintiff's request for liposuction surgery to treat the symptoms of her lipedema on the basis the treatment is unproven. Contrary to United's position, specialized liposuction to treat the symptoms of

lipedema is not unproven. It is the only available therapy for this condition and has been the subject of various studies that show its beneficial effect. It is routinely performed at Stanford University Medical Center and other leading medical facilities.

47. Plaintiff has exhausted her administrative remedies, as alleged above.

48. Based on the foregoing, Plaintiff and the class members seek the payment of medical expenses, interest thereon, a clarification of rights, and attorney fees.

**SECOND CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY AND EQUITABLE RELIEF UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(3)]**

49. Plaintiff and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

50. As alleged herein, United has acted as an ERISA fiduciary with respect to the administration and claims decisions under United plans and, in particular, has acted as an ERISA fiduciary in denying claims for liposuction to treat lipedema, as alleged herein.

51. United improperly denied Plaintiff's and the class members' claims for liposuction treatment of lipedema in beach of its fiduciary duties, as alleged herein.

52. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the class members seek declaratory, equitable and remedial relief as follows:

   a. An order declaring that United's denials of claims for liposuction treatment for advanced lipedema are wrong and improper;

   b. An injunction requiring United to reevaluate and reprocess Plaintiff's and class members' claims without the erroneous denial basis under appropriate and valid medical criteria;

   c. An injunction requiring United to provide notice of the reevaluation and reprocessing in the form and manner required by ERISA to all class members;

   d. An accounting of any profits made by United from the monies representing the improperly denied claims and disgorgement of any profits;

///

   e. Such other equitable and remedial relief as the Court may deem appropriate; and

   f. Attorneys' fees in an amount to be proven.

## REQUEST FOR RELIEF

Wherefore, Plaintiff and the class members pray for judgment against United as follows:

1. Benefits denied in an amount to be proven at trial, including interest;
2. A clarification of rights to future benefits under the plan for all class members;
3. Injunctive and declaratory relief, as described above;
4. An accounting of any profits made and retained through the improper denial of claims and disgorgement of any profits;
5. Attorneys' fees; and
6. Such other equitable and remedial relief as the Court may deem just and proper.

DATED: October 7, 2019          GIANELLI & MORRIS

By:  /s/ Adrian J. Barrio
   ROBERT S. GIANELLI
   JOSHUA S. DAVIS
   ADRIAN J. BARRIO
   Attorneys for Plaintiff
   MARY CALDWELL