UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY CALDWELL,

    Plaintiff,

  v.

UNITEDHEALTHCARE INSURANCE COMPANY, et al.,

    Defendants.

No. C 19-2861 WHA

**ORDER ON 76 MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

In this putative class action to recover health benefits under an ERISA plan, plaintiff insured moves for certification of a class under Rule 23(b)(1) and Rule 23(b)(2). Defendant insurers oppose. To the extent stated herein, plaintiff's motion is granted.

## STATEMENT

Plaintiff Mary Caldwell brought this action on behalf of herself and all others similarly situated, against defendants UnitedHealthCare Insurance Company and United HealthCare Services Inc. (together, "United"). Plaintiff alleges that United categorically denied all requests and/or claims for liposuction to treat lipedema as unproven and not medically necessary, without regard to members' individual medical need, in violation of ERISA.

United plans generally cover health services to treat illnesses and injuries. Lipedema is a chronic, progressive, painful, and immobilizing condition involving an abnormal buildup of adipose tissue (body fat). Plaintiff's plan under her husband's employer, Oracle, excludes from coverage medical services United considers to be unproven. Such services are defined as those that are determined not to be effective for treatment of the medical condition and/or not to have a beneficial effect on net health outcomes due to insufficient and inadequate clinical

evidence from well-conducted randomized controlled trials or cohort studies in the prevailing published peer-reviewed medical literature.

United has routinely determined that liposuction to treat lipedema is unproven and excluded from coverage. Liposuction is an umbrella term for various surgical procedures to remove adipose tissue (body fat) from the patient using suction. Contrary to United's position, plaintiff alleges that liposuction to treat the symptoms of lipedema is not unproven. Rather, it is the only available therapy for lipedema and it has been the subject of various studies that show its beneficial effect.

To ensure consistent benefit determinations in accordance with ERISA, United claim reviewers were trained to search for and apply Coverage Determination Guidelines ("CDGs"), "an internally developed tool to facilitate consistent and accurate interpretation of UnitedHealthcare commercial benefit plan language [that] provide[d] criteria and documentation requirements to determine whether a service [fell] within a benefit category or if it [was] excluded." United does not have a specific CDG for surgical treatment of lipedema.

If no specific CDG for a medical procedure existed, United medical directors would look for and apply the applicable omnibus policy, which included additional guidelines on whether a procedure ranked unproven and not medically necessary in all circumstances, or proven and medically necessary in certain circumstances. When proven medically necessary in only some circumstances, the omnibus or procedure specific CDG would so state. But, if unproven in all circumstances, the omnibus policy would provide that the procedure ranked as both "unproven and not medically necessary" (*compare, e.g.*, Decl. Davis Exh. 18 at 352 *with* Exh. 18 at 362).

There is no dispute that United has had an express omnibus policy on the books since January 1, 2020, which provided that "[l]iposuction for lipedema is unproven and not medically necessary due to insufficient evidence of safety and/or efficacy" (Decl. Davis Exh. 10 at 217–18, 225–28). Unlike other procedures listed in the omnibus policy, which are qualified with a "proven in certain circumstances" designation, the billing codes applicable to lipedema surgery are categorized as "unproven" and "not medically necessary" in all circumstances (Decl. Davis Exh. 18 at 348, 349, 360–61). Since its enactment, United has

relied on the omnibus policy to deny claims for liposuction to treat lipedema as "unproven" and "not medically necessary" in all circumstances (Decl. Davis Exh. 14 at 291–92, 294–95; Exh. 10 at 228; Exh. 15 at 325–26; Exh. 19 at 372; Exh. 9 at 170, 176, 177–83).

Plaintiff's putative class period began in May 2015, however, long before United adopted the omnibus policy. In the absence of internal United guidelines or applicable third-party guidelines, medical directors were trained to query the Medical Technology Information Service (MTIS), the research arm of United's policy team. MTIS would perform a "literature review," and search for relevant prior reviews by MTIS. United medical directors always applied MTIS coverage recommendations when no applicable guidelines existed.

Prior to January 1, 2020, United's medical directors relied on MTIS' position that liposuction to treat lipedema was "unproven." The three medical directors who handled grievances and appeals for reconstructive/plastic surgery claims, to ensure consistency in the claims handling process, discussed and agreed that liposuction to treat lipedema was unproven, and uniformly denied grievances/appeals on the basis of that "understanding" (Decl. Davis Exh. 10 at 201–02).

Plaintiff's individual case involves two pre-service requests and denials of coverage for lipedema surgery in 2017 and 2019, both prior to United's adoption of the applicable omnibus policy. Both requests were substantially identical. After plaintiff was diagnosed with Stage 3 lipedema, her physician proposed treatment with specialized liposuction. United denied her coverage, stating "these procedures are not proven to be helpful for people with your condition. Your plan does not cover for unproven services." The medical director who denied coverage based the denial on an MTIS report. United denied Caldwell's subsequent appeal stating that neither the clinical information nor peer-reviewed literature supported the use of specialized liposuction for lipedema. Thus, United deemed the procedure an unproven service under the plan. Although plaintiff had a right to a second appeal and an external review of the denial, she did not request either.

A prior order granted in part and denied in part United's motion to dismiss. Plaintiff amended her complaint and United answered the amended complaint. Discovery ensued.

3

United subsequently identified thirty-four cases or denials that potentially met the class criteria, including twenty-seven unique members. Caldwell now seeks to certify the following class for a five-year period beginning May 24, 2015 (Mot. at 9):

> All persons covered under ERISA health plans, self-funded or fully insured, that are administered by United and whose claims for specialized liposuction for treatment of their lipedema were denied as unproven.

This order follows full briefing and a telephonic hearing (due to the ongoing pandemic).

**ANALYSIS**

Class certification is appropriate when a plaintiff can show that all of the prerequisites of Rule 23(a) and one of the requirements of Rule 23(b) has been met. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). Rule 23(a) considers whether "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Plaintiff seeks certification under Rule 23(b)(1) or Rule 23(b)(2), both limiting the available relief to declaratory or injunctive relief. United challenges plaintiff at each and every turn.

The Supreme Court has "cautioned that a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim," *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); however, "[m]erits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 464–65 (2013).

1. **Rule 23(a)**

    A. **Numerosity.**

The numerosity requirement of Rule 23(a)(1) is satisfied when joinder of individual plaintiffs would be impracticable. Numerosity requires an examination of the specific facts of each case and imposes no absolute limitations. *Gen. Tel. Co. of the Nw. v. Equal Employment*

4

*Opportunity Comm'n*, 446 U.S. 318, 330 (1980).  Numerosity is generally satisfied, however, when the class contains forty members, and insufficient for classes of twenty or fewer.  When a proposed class falls in the gray area, as here, courts will consider (1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of putative class members; (3) putative class members' financial resources; (4) the ability of members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members.  *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. Oct. 26, 2011) (Judge Richard Seeborg); *see also Ansari v. New York Univ.*, 179 F.R.D. 112, 114–15 (S.D.N.Y. Apr. 20, 1998) (Judge Michael Mukasey).

Here, United identified thirty-four cases or denials that potentially met the class criteria, including twenty-seven unique members "whose requests for liposuction to treat lipedema were denied, at least in part, on the grounds that the requested procedure [was] considered 'unproven' under the member's health benefit plan."

United argues that ten of these members should not be included in the class because their requests were denied for other reasons not challenged by plaintiff.  But this argument ignores that one of the reasons United *did* give for denying coverage included the "unproven" determination at issue.  The claimed harm flows from the application of the "unproven" exclusion, and as the assertion of "other defenses against some members of the class does not affect the availability of classwide relief under Rule 23(b)(2) to enjoin the assertion of one specific defense."  *De Roches v. California Physicians' Service*, 320 F.R.D. 486, 497–98 (N.D. Cal. June 15, 2017) (Judge Lucy Koh).  As such, those denied coverage on multiple grounds remain viable members of the class, so long as on such ground did in fact include the "unproven" exclusion.

The nature of the requested relief further supports a finding that the putative class is sufficiently numerous.  Since United denied plaintiff coverage on the "unproven" exclusion, it formalized the allegedly wrongful practice into an express policy denying coverage for liposuction to treat lipedema.  If the class is successful, relief under Rule 23(b)(2) will serve all

members of the putative class without depriving any of further rights they may have to monetary damages.

### B.     Commonality.

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of fact and law which are common to the class."  "The existence of shared legal issues with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  The typicality requirement of Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claims are typical if they "are reasonably co-extensive with those of absent class members; they need not be substantially identical." Id. at 1020. To show commonality, a plaintiff "need not show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution.  So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

The operative complaint contains two class claims under ERISA: a claim for clarification of rights pursuant to Section 1132(a)(1)(B) and a claim for breach of fiduciary duty pursuant to Section 1132(a)(3) (Dkt. No. 43 ¶¶ 42–52).  Both claims, rather than turning on individualized coverage decisions, challenge United's practice of denying all requests for lipedema surgery as "unproven" and not "medically necessary."  That practice raises the common issue of whether liposuction is "effective for [the] treatment" of lipedema.  This issue satisfies the test for commonality because its determination "will resolve an issue central to [United's liability] in one stroke."  *Mazza*, 666 F.3d at 588; *see also Parsons*, 754 F.3d at 681.

United argues that the purported common issue is inconsistent with the complaint because the complaint references "specialized liposuction" rather than liposuction generally. But, as plaintiffs note, United has admitted that it deems *all* forms of liposuction to treat lipedema as "unproven."  No reason is provided as to why the distinction between different types of liposuction is important.  United similarly raises a distinction between plaintiff's

6

diagnoses of lipedema and lymphedema, but United denied coverage for both lipedema *and* lipolymphedema, an advanced stage of lipedema. While there may well be some relevant distinction between the two diagnoses, United does not assert that its coverage determinations turned on this distinction. United's medical directors in fact made their determinations solely based on their conclusion that liposuction is an unproven treatment for lipedema alone.

United argues that commonality is lacking for the further reason that the common question raised cannot be answered uniformly, in a single stroke, but instead relies on each particular member's request, and, specifically the timing of each request. The point is well taken, at least prior to January 1, 2020, since each determination purportedly relied on a review of the scientific literature at the time of the request. But the issue is a red herring. We are concerned with the possibility of disparate answers. That possibility does not exist here. In reliance on the "unproven" exclusion, United has denied coverage for liposuction to treat lipedema at *all* relevant times. And, even if a scientific paper published at some point during the class period draws a temporal line between claims rightly or wrongly denied as "unproven," such an answer would still be capable of uniform application.

Finally, United argues that the class lacks a common injury, since it includes members who were not harmed at all and those whose claims were denied on grounds in addition to the "unproven" ground. *First*, the proposed class is limited to members whose claims for liposuction to treat lipedema were denied. Thus, United members whose "unproven" denials were overturned following the conclusion of United's internal review process — whether through United's "peer to peer" process, external review, post-service review, or through an exceptional payment by a self-insured employer — are not part of the class and do not factor into the commonality analysis. *Parsons*, 754 F.3d at 675, *Mazza*, 666 F.3d at 589.

*Second*, plaintiff's claims do not require a showing that she (or any class member) was "entitled to the denied benefits." *Des Roches*, 320 F.R.D. at 497. Because "the claimed harm is one of process not outcome," plaintiff's showing that United "caused harm on a general basis" through the application of an incorrect coverage standard is sufficient to establish commonality. *Id.* at 498. And, "[t]he fact that [United] may assert other defenses against some

7

members of the class does not affect the availability of classwide relief under Rule 23(b)(2) to enjoin the assertion of one specific defense that, allegedly, is not legally permissible." *A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 485 (D. Or. Dec. 24, 2013) (Judge Michael Simon). As discussed, "[t]he existence of shared legal issues with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019.

At oral argument, the Court raised the question of whether different state laws would apply to different class members, which could be a function of the various plans and the particular state laws called out therein in plan documents. No one bothered to raise this issue and no counsel had a clue as to the answer, so this order will drop the point.

### C. Typicality and Adequacy.

United addresses the typicality and adequacy prerequisites together. When "the claims or defenses of the representative parties are typical of the claims or defenses of the class," typicality is satisfied. Rule 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Class certification is inappropriate, however, if a putative class representative is subject to "unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This prerequisite has two parts: (1) that the proposed representative plaintiff and her counsel do not have any conflicts of interest with the proposed class; and (2) that they will prosecute this action vigorously on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

United rehashes its commonality arguments already rejected that this order need not revisit here. Two additional arguments are presented, however, both unavailing. *First*, United argues that plaintiff is not typical of claimants who were denied pursuant to the omnibus policy adopted at the beginning of this year. But the omnibus policy is merely a continuation, not a beginning. Before the omnibus policy became effective, United relied on the MTIS documents

and the unanimous agreement of its medical directors to systematically deny claims for liposuction to treat lipedema on "unproven" grounds.

United provides three selected examples to demonstrate it did not have such a uniform policy prior to the enactment of the omnibus policy. The first two specify different procedures (microsurgical lymphatic vessel repair and lymphovenous bypass) to treat a different disease (lymphedema). The final example presents a denial of a suction-assisted lipectomy to treat lipedema as purely cosmetic. None of these examples establishes that United did not have a uniform policy of denying *liposuction* to treat *lipedema* as unproven. At best, one example is given of denying liposuction to treat lipedema on cosmetic grounds, rather than unproven grounds. But that example does not demonstrate that plaintiff is atypical of others denied coverage under the omnibus policy for the same reason plaintiff received a denial, namely, that liposuction to treat lipedema ranked as unproven.

*Second*, United argues that plaintiff's claim is subject to a unique exhaustion defense. A unique defense, however, only precludes class representative status if it threatens to become "a major focus of the litigation" such that the class representative would be unduly preoccupied responding to that defense. *Hanon*, 976 F.2d at 509. This defense can be summarily resolved prior to trial and does not threaten to become a major focus of the litigation. Both sides understand that plaintiff will argue that further appeals would have been futile. And, United has made it abundantly clear, in adopting its omnibus policy on lipedema surgery, that claims will be denied for liposuction to treat lipedema as "unproven." These arguments do not present factual or other circumstances that threaten to become a major focus of this litigation.

Plaintiff Caldwell is typical of all class so long as they were denied on the same "unproven" grounds, even if the denial cited alternative grounds for the denial. Plaintiff does not become atypical because of the theoretical possibility that during the class period the medical literature became so favorable to patients that denial of members in the later part of the class period would be less reasonable than those earlier in the class period. The court recognizes that since plaintiff was denied for the first time on November 28, 2017 that it is theoretically possible that someone who came after had a stronger case and someone who came

1  before had a weaker case if the march of science was robust during the class period. United has

2  not shown that this is true. In fact, United argues to the contrary that, at all times during the

3  class period, liposuction was an unproven procedure for the treatment of lipedema. United

4  points to no single breakthrough study during the class period that would cause the theoretical

5  possibility to become a realistic possibility.

**Rule 23(b).**

Caldwell relies on both Rule 23(b)(1) and Rule 23(b)(2). Certification under Rule 23(b)(2) requires the additional finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." United raises no new arguments here. Plaintiff challenges United's application of the "unproven" exclusion to claims for liposuction to treat lipedema. But under the certified class, uniform equitable relief can be applied to the class as a whole. Because the class may be certified under Rule 23(b)(2), this order does not reach plaintiff's arguments under Rule 23(b)(1).

This order also points out that members denied for multiple reasons cannot be part of a damages class, but they can be part of an injunctive and declaratory relief class. A subclass will be created for those upon which "unproven" was the only ground for denial. No damages can be awarded to class members for whom "unproven" was an alternative ground for denial.

\*          \*          \*

Finally, the parties dispute whether the class is ascertainable, which both identify as an implicit requirement under Rule 23. The parties agree that for a Rule 23(b)(2) class to be ascertainable, the only inquiry is whether the proposed class members can be identified through objective criteria (Mot. at 20; Opp. at 22). United concedes that it can filter its spreadsheet data to determine certain information, such as whether members' claims were denied, and limited descriptions of why the claims were denied. But it claims it will be difficult to determine what categories of liposuction fit plaintiff's definition of "specialized liposuction," whether a member requested the surgery "to treat lipedema" or for multiple diagnoses, and whether a member's claim was denied on the "unproven" exclusion alone.

10

*First*, none of these arguments establish that the class is not ascertainable.  As United concedes, it can make these determinations by examining the individual medical records of its members.  *Second*, much of the extra effort United claims must be undertaken is unnecessary.  As discussed, so long as a United member sought some form of liposuction to treat lipedema, was covered under Oracle's health plan with United, and was denied coverage based on the "unproven" exclusion, whether denied on that basis alone or others, the claimant remains a member of the class.

## CONCLUSION

Plaintiff's motion for class certification is **GRANTED** in part, with a specified class period. This order certifies the following class:

> All persons covered under ERISA health plans, self-funded or fully insured, that are administered by United and whose claims for specialized liposuction for treatment of their lipedema were denied as unproven between January 1, 2015 and December 31, 2019.
>
> A damages subclass will be created for members denied solely on the grounds that liposuction is "unproven" for the treatment of lipedema.

Plaintiff Mary Caldwell shall serve as class representative, and Gianelli & Morris is appointed as class counsel.

Within **TWENTY-ONE CALENDAR DAYS** of the date of entry of this order, all parties shall submit jointly an agreed-upon form of notice.  Plaintiff along with defendants must also submit a joint proposal for dissemination of the notice, and the timeline for opting out of the action. Plaintiff must bear the costs of the notice, which shall include mailing by first-class mail.

**IT IS SO ORDERED.**

Dated: December 29, 2020

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE