United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY CALDWELL,

          Plaintiff,

      v.

UNITEDHEALTHCARE INSURANCE
COMPANY, UNITEDHEALTHCARE
SERVICES, INC.,

          Defendants.

No.  C 19-02861 WHA

**ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

**INTRODUCTION**

Affiliated plan administrators move for summary judgment on all claims brought by a

class of medical insurance plan beneficiaries seeking coverage for liposuction to treat

lipedema.

**STATEMENT**

Class representative Mary Caldwell received medical insurance through her husband's

employer, Oracle (Def. Exh 108 at UHC_CALD_0000651; Def. Exh. 28 at

UHC_CALD_0001082).  Oracle funded the insurance but delegated plan administration to

UnitedHealthCare Insurance Company ("United") (Def. Exh. at  UHC_CALD_0001082).

Caldwell sought treatment of her lipolymphedema, the late-stage form of lipedema, a chronic

United States District Court
Northern District of California

1  progressive condition causing the abnormal accumulation of fat deposits in the trunk and

2  appendages that can possibly become painful, immobilizing, and lead to other health

3  consequences.

4  Since 2017, Caldwell has sought to treat her lipolymphedema with liposuction, a surgical

5  procedure which uses suction to remove fatty tissue from the body.  Caldwell requested that

6  United approve coverage for liposuction and was twice denied on the basis that her request fell

7  under United's "unproven" exclusion.  Caldwell appealed both denials to United's first level of

8  internal appeals and United upheld both its 2017 and 2019 denials (Def. Exhs. 16, 27).

9  **ANALYSIS**

10  **1.    THE PLAN ILLEGALLY REQUIRED THREE LEVELS OF REVIEW TO EXHAUST.**

11

12  United contends that Caldwell's entire ERISA suit is barred for failure to exhaust all

13  administrative remedies available under the plan.  ERISA regulations, however, specifically

14  forbid requiring three levels of appeal:

15  (c) The claims procedures of a group health plan will be deemed to be reasonable only if,

16  *        *        *

17  (2) The claims procedures do not contain any provision, and are not administered in a way, that requires a claimant

18  to file more than two appeals of an adverse benefit determination prior to bringing a civil action under section

19  502(a) of the Act;

20  29 C.F.R. § 2560.503-1(c)(2).

21  ERISA further requires that health insurance plans provide a plan document that is

22  "written in a manner calculated to be understood by the average plan participant, and . . .

23  sufficiently accurate and comprehensive to reasonably apprise such participants and

24  beneficiaries of their rights and obligations under the plan."  29 U.S.C. § 1022.

25  Here, the plan covering Oracle employees violated these requirements because it required

26  three levels of appeal:  two internal appeals and one external review.  Specifically, in "HOW

27  TO APPEAL A CLAIM," the 2018 Oracle plan laid out procedures for the first and second

28  appeals and stated:

2

United States District Court
Northern District of California

> Your first appeal request must be submitted to UnitedHealthcare within 180 days after You receive the claim denial.  You should submit all information that You feel supports Your claim.  **If You fail to appeal a denied claim within the 180-day period, UnitedHealthcare's claim determination will be final and binding.**
>
> *          *          *
>
> If You are not satisfied with the first level appeal decision of UnitedHealthcare, You have the right to request a second level appeal from UnitedHealthcare.  Your second level appeal request must be submitted to UnitedHealthcare within 60 days from receipt of first level appeal decision.  **If you fail to appeal a denial claim within the 60-day period, UnitedHealthcare's claim determination will be final.**

(emphasis in original) (Plaintiff Exh. 24 at 484-85).

*Immediately after* the above, the plan included a *third* level of review:

> **FEDERAL EXTERNAL REVIEW PROGRAM.**
> If, after exhausting Your internal appeals, You are not satisfied with the determination, or if UnitedHealthcare fails to respond to your appeal in accordance with applicable regulations regarding timing, You may be entitled to request an external review of adverse benefits determinations at no charge to you (emphasis in original).

The section then gave three conditions under which a claimant would be entitled to the external review, including "clinical reasons," "the exclusions for Experimental, Investigational, or Unproven Services," recission of coverage, or if otherwise required by law.

*Immediately after* the section on the Federal External Review Program came "**YOUR FINAL RECOURSE – AFTER EXHAUSTION OF REMEDIES**," the provision addressing suing in court.  It stated:

> If You disagree with the final decision on Your appeal, You have the right under Section 502(a) of ERSA to file suit in a state or federal court located in San Francisco, California.  You must do so within one year after You have exhausted all steps in the UnitedHealthcare Claims Procedures and Appealing a Denied Claim under the UnitedHealthcare Plans sections above (emphasis added).

The last sentence and particularly the last two words — "sections above" — made the federal external review program mandatory in order to sue in court.  The section entitled "**FEDERAL EXTERNAL REVIEW PROGRAM**" appeared immediately *before* the section

3

1    entitled "**YOUR FINAL RECOURSE**" and thus was one of the "sections above."

2    "**FEDERAL EXTERNAL REVIEW PROGRAM**" thus added a third level of appeal.  The

3    entire regime, therefore, was illegal under the regulation.

4    To be clear this order and the regulation do not bless a requirement for two levels of

5    appeal.  The regulation says three is too many in all cases but does not say two can always be

6    imposed.  In a case like this in which United as a matter of established policy and practice

7    treats a procedure as "unproven" across the board, one level of appeal is plenty and a second

8    level would be burdensome and futile.

**2.    UNITED'S LETTERS TO CALDWELL WERE MISLEADING
       AS TO HER RIGHTS AND OBLIGATIONS.**

United's denial letters exacerbated the unfairness.  While they alluded to steps she might

take by repeatedly using the term "may," the letter never stated that the court house doors

would be closed to Caldwell if she took only one appeal.

United's first denial letter dated November 28, 2017 repeatedly used "may" in reference

to United's appeal process:

> You . . . *may* ask to see any information we used to make this
> decision (Exh. 13 at 304).

> You or your authorized representation *may* request an appeal (Exh.
> 13 at 306).

> If you don't send the appeal on time, you *may* lose your right to
> appeal the decision (*ibid.*).

> You *may* ask for an urgent external review to be completed at the
> same time as an internal urgent appeal (Exh. 13 at 306).

> You *may* be able to ask for an external review (*ibid.*).

> You *may* have the right to file a civil action under ERISA if all
> required reviews of your claim have been completed" (Exh. 13 at
> 306).

Identical "may" language appeared in United's second letter dated March 6, 2019, which

denied Caldwell's 2019 request.  In each denial letter United used the word "may" six times to

refer to appeal procedures and going to court.  Never in either letter was there any statement

4

United States District Court
Northern District of California

1    that Caldwell had any obligation to exhaust further internal appeals on pain of losing her day in

2    court.

3            Similarly, United's appeal denial letters, received June 1, 2018 and April 26, 2019,

4    blazed with a profusion of "mays" once again indicated a permissive reading of the appeals

5    process:

6            If you are not satisfied with this decision, you or your authorized
             representative *may* request a second level review.  To request a
7            review, you must send a letter requesting an appeal . . . .

8                            *       *       *

9            You may be able to request an external review.

10                           *       *       *

11           You may have the right to file civil action under section 502(a) of
             ERISA after you have exhausted all your appeal rights

12   (Exh. 16 at 357–58).  Again, nowhere did the letters inform Caldwell that she was obligated

13   pursue those remedies as a precondition to preserving her court rights.

14           The letters ranked as most misleading.  United could have written (but did not) a clear-

15   cut sentence stating that if she failed to take further reviews she would lose her right to sue in

16   court.  Instead, United employed permissive "may" language to set a trap for the unwary, a

17   litigation gimmick in waiting.  This Court will not be party to the gimmick.

18       **3.    DE NOVO REVIEW IS REQUIRED.**

19           Turning to the merits, United has chosen not to advance an administrative record in

20   support of its motion for summary judgment.  Indeed, nowhere in United's opening brief,

21   declarations, or supporting evidence does United even use the phrase "administrative record."

22   Instead, United submitted a de novo record.  Nevertheless, it says it is entitled to deference

23   under the abuse of discretion standard.

24           This is incorrect.  The raison d'être for the abuse of discretion standard begins with a

25   proper administrative record that reasonably supports the decision as it was made at the time in

26   question.  Without such a record, it is impossible to judge whether the decision was in the

27   ballpark of reasonable.  United has refused to submit such a record and has instead compiled a

28

5

United States District Court
Northern District of California

1    new record that includes evidence not before it at the time it considered Caldwell's claims.

2    The new record consists of new evidence on liposuction and testimony by experts that could

3    not have been before United at the time it denied Caldwell's claims.  It has submitted a record

4    you would expect to find in a de novo review.  Where our court of appeals has insisted on an

5    abuse-of-discretion standard, an administrative record had been supplied, but here United has

6    not submitted an administrative record so the predicate for the abuse-of-discretion standard is

7    missing.  So de novo review will apply.

8        On the record before us now, questions of fact remain as to the efficacy and safety of

9    liposuction, so summary judgment must be denied in favor of a trial at which time the various

10    experts can be cross-examined and their credibility assessed.

### 4. THE BURDEN IS ON UNITED TO SHOW A MEDICAL PROCEDURE IS UNPROVEN, NOT ON THE CLAIMANT TO SHOW IT IS PROVEN.

12        United contends the plan excluded "unproven" services.  The order disagrees.  It

13    excluded services determined not to be effective due to insufficient and inadequate clinical

14    evidence from well-conducted randomized controlled trials or cohort studies in the prevailing

15    published peer-reviewed medical literature.

#### EXPERIMENTAL, INVESTIGATIONAL, OR UNPROVEN SERVICES

> Health services, including medication that are determined not to be effective for treatment of the medical condition and/or not to have a beneficial effect on health outcomes
>
> - Well-conducted randomized controlled trials are two or more treatments compared to each other, with the patient not being allowed to choose which treatment is received.
>
> - Well-conducted cohort studies from more than one institution are studies in which patients who receive study treatment are compared to a group of patients who receive standard therapy.  The comparison group must be nearly identical to the study treatment group.

25        As Lucy Koh recently held in *Wise v. Maximus Federal Services, Inc.*, nearly identical

26    language places the burden of proof on United to show, by appropriate studies, that the

27    procedure is *not* effective:

28        A further difficulty arises from the fact that the "Unproven

Service(s)" exclusion applies when a treatment is determined to be not effective and not to have a beneficial effect on health outcomes based on insufficient and inadequate clinical evidence.  This is subtly different from an exclusion that would apply when a treatment is not determined to be effective based on lack of clinical evidence.

The Court construes the "Unproven Service(s)" exclusion to apply only when the outcome of qualifying studies affirmatively suggest that a treatment is ineffective and does not have a beneficial impact on health outcomes.  As the Court noted on summary judgment, this is a higher threshold than mere absence of evidence; by its terms, the exclusion instead requires the actual existence of evidence of ineffectiveness and lack of impact.  This result is compelled by the principles of ERISA, which require the Court to construe exclusions narrowly, enforce Plan terms as written, and resolve ambiguities against the drafter.

*Wise v. MAXIMUS Fed. Servs., Inc.*, No. 18-CV-07454-LHK, 2020 WL 4673152, at *11

(N.D. Cal. Aug. 12, 2020).

## CONCLUSION

United's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated:  January 27, 2021

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE