**Pages 1 - 17**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | |
|---|---|
| MARY CALDWELL, on behalf of herself and all others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>VS. )<br>)<br>UNITED HEALTHCARE INSURANCE )<br>COMPANY; UNITED HEALTHCARE )<br>SERVCES, INC., )<br>)<br>Defendants. )<br>) | **NO. C 19-02861 WHA** |

San Francisco, California
Wednesday, August 18, 2021

**TRANSCRIPT OF TELEPHONIC PROCEEDINGS**

**APPEARANCES**:  (via telephone)

For Plaintiffs:
        GIANELLI & MORRIS
        550 S. Hope Street - Suite 1645
        Los Angeles, California  90071
   **BY:  JOSHUA S. DAVIS, ATTORNEY AT LAW**

For Defendant:
        HOGAN LOVELLS US LLP
        1999 Avenue of the Stars - Suite 1400
        Los Angeles, California  90067
   **BY:  DAVID W. SKAAR, ATTORNEY AT LAW**
      **MICHAEL M. MADDIGAN, ATTORNEY AT LAW**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

**Wednesday - August 18, 2021**                                    **8:17 a.m.**

P R O C E E D I N G S

---oOo---

**THE CLERK:** Calling civil 19-2861, Caldwell versus United Healthcare Insurance Company.

Counsel for the Plaintiff, will you please state your appearance.

**MR. DAVIS:** Good morning, Your Honor, this is Joshua Davis on behalf of the Plaintiff.

**THE COURT:** Good morning.

**MR. MADDIGAN:** Good morning, Your Honor, Michael Maddigan and David Skaar for Defendant.

**THE COURT:** Good morning. Anyone else?

(No response.)

**THE COURT:** Okay. We are here for a motion for preliminary approval of a class settlement, and I have some questions for you.

With respect to the Plaintiff herself, Ms. Caldwell, is there any special agreement for her?

**MR. DAVIS:** This is Joshua Davis for the Plaintiff.

No, Your Honor. There is no incentive award in the settlement agreement pursuant to your order -- standing order. She can request a reprocessing like all the other class members.

**THE COURT:** And is she treated any differently from

1  any class member?
2  **MR. DAVIS:** No.
3  **THE COURT:** All right. Let's spend some time then --
4  I'm sorry, does somebody want to say something? Someone needs
5  to mute their phone.
6              (Pause in the proceedings.)
7  **THE COURT:** All right. Thank you.
8      All right. I have tried to read your settlement
9  agreement. And in the copy that I have, which is supposed --
10 Exhibit D, which is supposed to be the new policy, it's all
11 redacted.
12 **MR. DAVIS:** Your Honor, this is Joshua Davis for the
13 Plaintiff.
14     There was -- when this was filed, Your Honor granted
15 Defendant's motion to temporarily seal the criteria. And it
16 was supposed to be public, I think, in early August.
17     So there was a redacted and unredacted version filed.
18     I do know that United did -- has filed -- publicly filed,
19 I think the other day, the policy.
20 **THE COURT:** I think I have that latter document. But
21 I want you to know what a sloppy job you have done in
22 presenting this to the Court.
23     You made it as hard as possible on me to understand what
24 your settlement is. That's why I have so many questions.
25     All right. Let's go through this -- I have a --

1            (Conference call interruption.)
2            **MR. DAVIS:**  This is Joshua Davis for the Plaintiff,
3    Your Honor.  We got cut off when I think you wanted to start
4    going through the settlement with us.
5            **MR. MADDIGAN:**  Yes, Your Honor, Michael Maddigan.  I'm
6    also back on.
7            **MR. SKAAR:**  And David Skaar as well for United
8    Healthcare.  Thank you.
9            **THE COURT:**  All right.  I think I have the document
10   that United Healthcare submitted which begins with the headline
11   Liposuction For Lipedema, Policy Number 2021T0625A.  And it
12   goes on and on.  Effective date October 1, 2021.
13       Is that the new proposed policy?
14           **MR. MADDIGAN:**  That is the new policy, Your Honor,
15   yes.  The criteria are the criteria that were submitted with
16   the agreement.
17           **THE COURT:**  Okay.  So I won't read the entire thing,
18   but I -- I read some of it, and I want to just summarize this
19   new rationale.
20       It says liposuction for lipedema is considered
21   reconstructive and medically necessary.  Let me stop there.
22   What does the term "reconstructive" mean?
23           **MR. DAVIS:**  Would you like the Plaintiff --
24           **MR. MADDIGAN:**  It's a --
25           **MR. DAVIS:**  -- or Defense Counsel --

1       **THE COURT:** I would like United Healthcare to answer.
2       **MR. MADDIGAN:** Your Honor, it's a term that is used in
3  plan documents. And here I think the easiest way to understand
4  it is, it is not cosmetic.
5       **THE COURT:** Well, that could be an issue. But all
6  right. To treat functional impairment. All right, now
7  "functional impairment" looks like it's a defined term; is that
8  correct?
9                    (Pause in proceedings.)
10      **THE COURT:** Hello? Functional impairment --
11      **MR. MADDIGAN:** Yes, Your Honor.
12      **THE COURT:** -- is underlined. All right.
13   So now do we find -- we have to go over to the next page.
14  Functional or physiological or physical impairment.
15      A functional or physical or physiological impairment
16  causes deviation from normal function of a tissue or organ.
17      This results in a significantly limited impaired or
18  delayed capacity to move, coordinate actions or perform
19  physical activities and is exhibited by difficulties in one or
20  more of the following areas:
21      Physical and motor tasks, independent movement, performing
22  the -- performing basic life functions.
23      Then it says, when all of the following criteria are met;
24  and then there is quite a number of criteria; a diagnosis that
25  meets the following criteria.

1    And then there were one, two, three, four, five, six,
2 seven sub criteria.
3    Absence of pitting edema from lipedema.  Explain to me
4 what pitting edema is.
5        **MR. MADDIGAN:**  Your Honor, this is -- as I understand
6 it as a non-doctor, it is a -- it is basically kind of pitting
7 or indentation of the skin.
8        **THE COURT:**  How similar or different are these
9 criteria from what was already the liposuction policy by United
10 Healthcare?
11        **MR. MADDIGAN:**  The prior -- I think the most
12 straightforward explanation -- and I can provide more detail if
13 you'd like -- but the prior policy provided that liposuction
14 for lipedema was an unproven service and so it was not covered
15 under the medical policy which was included in an Omnibus codes
16 policy.
17    In addition, that same restriction is contained in many
18 plans.
19    So these criteria are new criteria.  The policy itself is
20 different and provides -- now provides that lipedema --
21 liposuction for lipedema will be covered when certain medical
22 criteria are met.  And these are the criteria that is set --
23 that set forth the circumstances in which they will be covered.
24        **THE COURT:**  That's what troubles me is that -- is this
25 may be sleeves out of your vest.  All right.

1    And one of the criteria here is failure of the limb out
2  of -- how do you say that word, adipose?
3         **MR. MADDIGAN:**  Yes.
4         **THE COURT:**  -- hypertrophy to respond to recommended
5  bariatric surgery or other medically supervised weight loss
6  modalities.
7     Well, that sounds like you are going to require the
8  patient to go through weight loss regimens before you will give
9  them lipedema.  True?
10        **MR. MADDIGAN:**  That's one of the criteria of the
11 policy, Your Honor.  And, as I understand it, it's an important
12 criteria.
13    The Plaintiff's expert also agreed with that criteria, and
14 I'm happy to explain why if you like.
15        **THE COURT:**  Well, no, just a second.
16               (Pause in proceedings.)
17        **THE COURT:**  I'm going to come to a major point in a
18 minute here.
19    Another criteria is failure to respond to six or more
20 months of conservative treatment, another defined term.
21    So you have got this six-month failure to respond.
22 Conservative treatment is defined as non-surgical interventions
23 which encompass adhering to a healthy lifestyle through diet
24 and exercise, complete decongestive theory, bandaging,
25 compression garments, manual lymphatic drainage and emotional,

1   psychological and social support.
2       Okay.  So you are going to make the poor policyholder go
3   through six months of that before you will let them have
4   lipedema.
5       Look, I -- let me just tell you my general view of this.
6   I couldn't approve this without an independent expert telling
7   me that this is reasonable.
8       So I'm not going to approve that without that.  And I need
9   to figure out a way to get an independent expert -- at your
10  expense, by the way -- to explain to me this.
11      Your own bought and paid for expert, Mr. Nguyen, no way
12  I'm going to accept his word.  He is the Plaintiff expert.  Of
13  course he is going to say it is good.
14      And, by the way, it came in at the last minute.  It wasn't
15  filed with the motion.  That's one problem.
16      I have a very high suspicion of this settlement.  Not one
17  dollar is going to go to any class member except in a rare
18  circumstance.
19      The lawyer, according to your agreement, gets $875,000.
20  That's according to the agreement.
21      But no class member gets a nickel, zero, except in one
22  limited circumstance if they can prove if somebody is no longer
23  a class -- no longer a United customer and went ahead with the
24  surgery at their own expense, and they can show that they would
25  meet the new criteria, then they get some money; up to a total

1  of $75,000 limited, subject to possible re-negotiation.
2       And the class action lawyer gives them zero help.  There
3  is nobody there to help negotiate against United.
4       The class action lawyer takes the 875,000 and walks away
5  and leaves these poor class members to fend for themselves.
6       With respect to the -- and then get this.  Here is another
7  thing.  Everyone who is a class member is stuck with this --
8  with admitting that this is a good policy.
9       They are barred under your agreement from ever challenging
10 this new detailed -- highly detailed thing, for example,
11 failure to respond to six or more months of conservative
12 treatment.
13      All right.  So I -- I'm not saying yet I'm going to deny
14 this, but here is another thing:  Class Counsel won't get one
15 nickel of money until we wait and see how many -- how many
16 people in the class ever actually get benefit from this
17 settlement.
18      I think it's going to be very few because you put so much
19 of the burden on the class members that I think they are not
20 going to see it through to the end, which is exactly what
21 United Healthcare is hoping will happen here.
22      And United Healthcare gets to walk away from this with a
23 brand new policy that is possibly unreasonable.  That point I
24 can't tell without an expert.
25      So there is no provision here for class counsel to help a

1  single class member make a new claim.  Zero.
2       There is no way for anyone to get any money out of this
3  deal unless they are a former class member and they can prove
4  all those things that I went through a minute ago.
5           **MR. DAVIS:**  Your Honor, this is -- I would like to
6  address some of the --
7           **THE COURT:**  I haven't finished, but I'm going to let
8  you address it.  I will give you five minutes, and I will try
9  to keep quiet; but I want you to know this is not much of a
10 deal for the class.
11      It's a great deal for the lawyer.  A great deal for the
12 lawyer and not much of a deal for the class.
13      So that's my feeling.  Go ahead.  Whoever was speaking,
14 identify yourself.
15          **MR. DAVIS:**  Yes.  Your Honor.  This is Joshua Davis
16 for the Plaintiff and for the class.
17      And I strongly disagree with the statements you made about
18 the settlement and about class counsel.
19      This is not a damage case.  This is an injunctive relief
20 case under (b)(2).  Under ERISA, damages are not available.  A
21 (b)(3) class was not certified; just a (b)(2) class.
22      And the point of this case was to make a change in policy.
23 When we brought this case -- and we have sued many other health
24 plans over this -- United was not covering this at all; was
25 denying all these incidents as unproven experimental

1  treatments.
2      And so the goal was to get them to change the practice,
3  change the policy.  And a settlement gets virtually all the
4  relief sought in the complaint.
5      Their change -- they have removed their previous
6  conclusion that it is unproven.  United has issued a new
7  policy.  They will cover medically necessary treatment for
8  this.
9      We have our own experts from Stanford University who
10 validated the criteria, which are the same as other health
11 plans, and many people are now getting coverage for this now.
12     Regarding the reimbursements, first off, class members who
13 have not had the surgery can now have the surgery if they need
14 to.
15     **THE COURT:**  That is not true.  That is not true.  You
16 are just telling me a falsehood.
17     They have to go through and qualify under the new -- they
18 have to, first of all, submit a new claim without your
19 assistance.  And then they have to litigate it with the company
20 over whether or not they are going to meet the new criteria.
21     **MR. DAVIS:**  They have to have lipedema; right.  They
22 have to make sure they have lipedema.
23     **THE COURT:**  Yeah, that's the starting point.  But then
24 they got to go through six months of something else.  They have
25 got to meet these other criteria that -- look, I didn't read

1  all the criteria; but there are quite a number of requirements
2  before the company is going to cover it.
3          **MR. DAVIS:**  I believe an independent expert will
4  validate the criteria.  You know, you can argue whether it
5  should be three months or six months.  I don't think that is
6  worth having a trial over.
7          Regarding the cap issue you raised, there is no cap on
8  United members.  They can get -- there is no cap at all.  The
9  only cap that is in there is for former members.
10         And my understanding is that is for regulatory purposes;
11 that United needed to set reserves based on they predicted how
12 many people had paid out-of-pocket already.
13         In addition, this policy will benefit United members as a
14 whole, not just a small class of people.  I predict it will be
15 well over $10 million in benefits to --
16         **THE COURT:**  That is irrelevant because my duty is to
17 protect the class and not to protect somebody else in the
18 future.
19         And the class is -- turned out to be about 40 people or
20 less.  And to my view, I would be amazed if more than one or
21 two were able to sneak through these new rigorous criteria that
22 United Healthcare has agreed to.  It is a sleeves out of the
23 vest.
24         Now, maybe an independence expert would convince me to the
25 contrary in which case -- the simple answer is this:  We will

1  just wait and see.  We will just wait and see.  And I will hold
2  your attorneys fees in abeyance until a couple of years go by
3  and then we see how many people actually qualify.
4       If it turns out zero, one or two, then your attorneys fees
5  will be a lot less.  If it turns out to be the entire class,
6  well, then God bless you.  You will get the $875,000.
7       So to me, this is a gimmick where you want the fees up
8  front and you abandon the class.  They have to litigate
9  themselves with the -- United Healthcare.
10      And they are stuck with this policy.  The class members
11 cannot challenge this in court.  If somebody doesn't like this
12 policy and feels it is too restrictive, they can't challenge
13 the policy itself.  You are hamstringing the members of the
14 class.
15      There are a lot of problems with this that -- now, if an
16 expert were to come in and say:  This is tremendous.  This is
17 so good.  This is better than anything you could have expected
18 for, all right.  That might change my mind.
19      But right now I see some major problems.  I want to come
20 to one other problem.
21      The order that I issued in this case was quite clear.  You
22 should not have negotiated any amount of attorneys fees.  And
23 your excuse for having done it is -- I don't believe it.
24      Why did you violate my court order?  The whole point of it
25 is to avoid a collusive settlement like this where the lawyer

1  gets 875,000 and United Healthcare gets what it wants, and the
2  class members are left to fend for themselves.
3       It just looks like a collusive deal, and you did that in
4  direct violation of my order that says you cannot negotiate
5  with respect to attorneys fees.
6          **MR. DAVIS:**  Your Honor, this is Joshua Davis for the
7  Plaintiff.
8       We certainly did not intend to violate your order.  We
9  understood when we read it that if the Defendant wanted a cap,
10 it was already negotiated, which is the max that we could seek
11 as a reasonable attorney fee and cost award; that we could do
12 that.  And that's all it is.
13      We still would have to bring a motion that Your Honor
14 would have to approve.  We have to prove up our reasonable
15 attorneys fees and costs pursuant to the statute.
16         **THE COURT:**  Paragraph -- wait, no.  First of all, I
17 want you to say that is an unreasonable reading of that order.
18 The cap was with respect to a -- what it's called now, where
19 you -- it's a total amount, a fund case where it is total
20 liability, total damages, total attorneys fees and everything;
21 and there is, like, a $5 million settlement out of which comes
22 the attorneys fees, the amount to be determined by the Judge.
23      That is the cap that was referred to there.  It is very
24 clear.  And in 21 years you are the only lawyers who have ever
25 tried to read it some other way.

1       And, moreover, your proposed order, which I'm looking at
2  right now, says:  Paragraph 10, class Counsel are hereby
3  awarded fees and costs in the amount of $875,000.
4       That's the agreed on order that you had submitted to me.
5  It doesn't say "up to."  It says -- no.  You negotiated
6  $875,000, and you are not supposed to do that.  And the reason
7  you are not supposed to do that is to make sure that your own
8  interest is not being placed in the balance with those of the
9  class members.
10      So I'm very disappointed.  I'm not going to deny your --
11 I'm not going to deny it solely on that ground.  But I am going
12 to take it into account in deciding whether or not this is fair
13 to the class.
14      And next time, don't try a trick like that.  All right.  I
15 have got to move onto my next case.  So I will let each of you
16 make one last comment.  And then I got to go.  I have a big
17 calendar today.  So the Plaintiff, you get to go first.
18      **MR. DAVIS:**  I just have a question on how you'd like
19 us to proceed.  I know you are requesting an independent
20 expert.  Should we set a -- kind of a deadline to -- to provide
21 that?  How do you want that done?
22      **THE COURT:**  I don't trust -- any name that you would
23 give me I don't trust.  So I'm going to have to figure out on
24 my own how to get an independent expert.
25      You gave me a declaration from your litigation expert;

1  but, of course, he is going to say whatever you want.
2      So I don't -- I don't buy that.  That is not persuasive,
3  but an independent expert might be.
4      I'm not going to ask you to submit names.  I'm going to
5  get my law clerk or somebody who knows something about this
6  area to assist me.
7      And you lawyers are going to pay for it.  You are going to
8  pay for the fees whether or not this deal is ever approved or
9  not.  Because otherwise if you don't agree to that, then it's
10 going to be denied for that refusal alone.
11     Okay.  What does the Defense want to say before we sign
12 off?
13         **MR. MADDIGAN:**  I don't have anything to add,
14 Your Honor.
15         **THE COURT:**  All right.  Thank you.  You all can hang
16 up now.  I don't have an answer for you yet.
17     I do have this question:  Do we have an exact list of all
18 of the names of the class members?
19         **MR. MADDIGAN:**  There is -- we know who they are, yes,
20 Your Honor.
21         **THE COURT:**  I want you to submit by -- by Friday at
22 Noon, I want you to submit the exact list of all class members.
23     It doesn't need to be under seal.  It should be filed with
24 the court.  I want to know who is going to get protected by
25 this settlement and the names and addresses.  You can redact

1  their -- I want the names and addresses, but you can redact the
2  addresses for their privacy with the publicly filed version.
3            **MR. MADDIGAN:**  Very well, Your Honor.
4            **THE COURT:**  Thank you very much.  All right.  Counsel,
5  you can hang up.
6                 (Proceedings adjourned at 8:45 a.m.)
7                           ---oOo---

### CERTIFICATE OF REPORTER

We certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Thursday, August 19, 2021

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter