1

2

3

4

5

6

7

8

9        UNITED STATES DISTRICT COURT

10       NORTHERN DISTRICT OF CALIFORNIA

11

12

13   MARY CALDWELL,

14            Plaintiff,                    No.  C 19–02861 WHA

15       v.

16   UNITEDHEALTHCARE INSURANCE            **ORDER DENYING PRELIMINARY**
     COMPANY, et al.,                      **SETTLEMENT APPROVAL**
17
              Defendants.
18
     _____
19

20       Sadly, this is another class settlement proposal in which class counsel get vast amounts of

21   cash but the class members get merely a cosmetic settlement.  Under the proposed settlement, the

22   parties have agreed that class counsel will get $875,000 under a clear sailing agreement.  Our

23   court of appeals has held that this is a red flag indicating a potentially collusive settlement,

24   because "when the parties negotiate a 'clear sailing' arrangement providing for the payment of

25   attorneys' fees separate and apart from class funds," a settlement carries a risk of "enabling a

26   defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an

27   unfair settlement on behalf of the class."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d

28

935, 947 (9th Cir. 2011).  In fact, the Court's prior order herein regarding class actions and class action settlements forbids such agreements for this exact reason (Dkt. 22).  The order states:

> To avoid collusive settlements, the Court prefers that all settlements avoid any agreement as to attorney's fees and leave that to the judge.  If the defense insists on an overall cap, then the Court will decide how much will go to the class and how much will go to counsel, just as in common fund cases.  Please avoid agreement on any division, tentative or otherwise.  A settlement whereby the attorney seems likely to obtain funds out of proportion to the benefit conferred on the class must be justified.

This violation stands out as a sore thumb and a red flag.

The proposed settlement is further unfair to class members because it is impossible to know if they will qualify under the new criteria or not (and, as explained below, the current medical records for class members suggest that some potentially deserving class members will not meet the criteria).

A prior order asked the parties to analyze how many class members would qualify.  United found that six class members are likely ineligible, four class members meet many of the criteria for eligibility, thirteen class members meet most of the criteria, and five class members lack sufficient records for a determination of potential eligibility under the criteria.

Plaintiffs' independent analysis of eligibility found that five members likely meet the criteria, that seven will be disqualified based on symptoms linked to comorbid lymphedema, and that fifteen members' files lack sufficient evidence to determine eligibility (e.g., their files did not include photographs).

Plaintiffs' conclusion about the seven class members who may have lymphedema is especially important.  Plaintiffs' review suggests that seven class members have pitting edema (an exclusion from eligibility) and two of these seven class members also have a negative Stemmer sign (another exclusion).  Plaintiffs contend that comorbid lymphedema could account for these outcomes.  Lipedema in its late stage can turn into lipo-lymphedema (comorbid lipedema and lymphedema).  Therefore, the presence of pitting edema and a negative Stemmer sign as exclusionary criteria could deny coverage to deserving class members whose lipedema has become so severe that it has morphed into lipo-lymphedema.  Even plaintiffs acknowledge

2

that they should collaborate with United to "address[] the issue of modifying the criteria to account for this dual diagnosis" (Br. at 3).

Both parties state that updated information is needed to definitively determine eligibility. United points out that the evidence provided by treating doctors in support of prior requests for liposuction may not have been complete because the submissions were based on the prior policy. Plaintiffs also point out that existing records could be supplemented by class members seeking reprocessing of their claim and that more complete records will likely garner more approvals.

These responses underscore one issue with the settlement, namely, that class members must submit new claims with supplemental information instead of United automatically readjudicating the prior claims. Thus, class members bear the burden of righting an improper denial. United does not even agree to affirmatively request the additional information needed for reprocessing prior denials of class members still covered by United or to work with physicians of denied class members.

True, plaintiff's expert has submitted a declaration stating that the new agreed-upon criteria are reasonable. That is hardly an unbiased source. Of course plaintiff's counsel, once the parties agreed on the $875,000 in attorney's fees, has a strong prejudice in favor of the deal.

But even if the new agreed-upon criteria were reasonable in this case, it would be unfair to bind the class to the criteria forever and prevent them from challenging the reasonableness of the criteria (even if they can dispute the application of the criteria to their particular circumstances with their own ERISA claim). The agreement provides no help from class counsel to obtain coverage under the new regime. The agreement provides no assurance that class counsel will represent class members if their claim is denied under the new criteria and they seek to bring an ERISA action challenging the application of the new criteria to their particular circumstances.

The settlement waives all damages claims with the exception of a fund for out-of-pocket expenses, which is determined as follows (Settlement at 8):

> For class members who have paid out of pocket for liposuction to treat lipedema and who are not covered under a United Plan as of the Effective Date, there will be an aggregate cap of $76,200 for all such claims. If this cap is exceeded by 10% ($83,820), then the parties will negotiate in good faith to formulate a new cap based

United States District Court
Northern District of California

upon the amount of the approved claims not to exceed a cap of up
to an additional $123,800 (for an overall total of $200,000).

If the out-of-pocket expenses of class members exceed the $83,820 in funds, then United is under no obligation to formulate a new cap, it must only negotiate in good faith.  If the out-of-pocket expenses surpass $200,000 then class members will be out of luck for any amount above that.

The Court attempted to appoint an independent expert to determine the extent to which deserving patients would be denied coverage under the new medical criteria.  The Court contacted Dr. Karen Herbst, a medical doctor and researcher specializing in adipose disorders, who was willing to serve as a court-appointed medical expert under Federal Rule of Evidence 706.  Dr. Herbst was introduced to both parties in a telephone conference and was questioned about potential conflicts of interest.  United then objected on multiple grounds, including the fact that Dr. Herbst participated in a May 2019 telephonic meeting with United's medical policy committee to discuss the use of liposuction for lipedema.  This warranted excusing Dr. Herbst from serving as a court-appointed expert.  The Court has been left to evaluate the medical criteria without an expert independent to the parties.

The Court sees such a large fee for the attorneys, little benefit to the class members, and substantial downsides to the class — namely, that class members are forced to accept the new medical criteria and cannot challenge them (even when they do not qualify under the new criteria) and that potentially deserving class members will be excluded.  For these reasons, this order denies preliminary approval for the proposed settlement.

**IT IS SO ORDERED.**

Dated:  October 12, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

4