UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY CALDWELL,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY and UNITED HEALTHCARE SERVICES, INC.,<br><br>    Defendants. | No. C 19-02861 WHA<br><br>**ORDER RE MOTIONS FOR FINAL APPROVAL OF CLASS SETTLEMENT AND ATTORNEY'S FEES AND COSTS** |

**INTRODUCTION**

In this certified class action to recover health benefits under an ERISA plan, plaintiffs move for final approval of class settlement and for attorney's fees and costs. Defendant insurers oppose the latter, but not the former. To the extent stated herein, plaintiffs' motions are **GRANTED**.

**STATEMENT**

The facts of this action, briefly summarized below, are explained in greater detail in prior orders. *See Caldwell v. UnitedHealthcare Ins. Co.*, No. C 19-2861 WHA, 2020 WL 7714394, at *1–2 (N.D. Cal. Dec. 29, 2020). Plaintiff Mary Caldwell brought this action on behalf of herself and all others similarly situated against defendants UnitedHealthcare Insurance

Company and United HealthCare Services Inc. (together, "United"). Plaintiff alleges that United violated ERISA by improperly denying on a categorical basis all health insurance claims for liposuction to treat lipedema as unproven and not medically necessary. A prior order certified the following class: "All persons covered under ERISA health plans, self-funded or fully insured, that are administered by United and whose claims for specialized liposuction for treatment of their lipedema were denied as unproven between January 1, 2015 and December 31, 2019." *Id.* at 6. Based on United's records, the class thus consists of 28 members (Dkt. No. 205).

The parties have moved for class settlement three times, having been rejected twice before. The first proposed settlement was rejected because "class counsel get vast amounts of cash but the class members get merely a cosmetic settlement." *Caldwell v. UnitedHealthcare Ins. Co.*, No. C 19-02861 WHA, 2021 WL 5359428, at *1 (N.D. Cal. Oct. 12, 2021). The second try fared better in that it was no longer a collusive deal, but any purported benefit to the class remained illusory (Dkt. No. 225). The parties' third proposed settlement was preliminarily approved in July 2023, with the caveat that class members' participation in the settlement post-approval would shed light on whether the purported benefits could be realized (Dkt. No. 251).

No class member opted out of the settlement, although two object, only one of which was timely made (Baessler Decl. ¶¶ 23–29). A patient advocate, Ms. Karie Kozak, appeared at the final approval hearing on behalf of three class members to inform the court of her concern regarding the practical use of the settlement for class members who no longer have United HealthCare insurance and her concern regarding the cost of lipedema surgery. After hearing from Ms. Kozak and both parties, the court found that class members who no longer have United HealthCare insurance are addressed under the terms of the settlement and may submit a request to United to review their claim. However, because the cost of lipedema is outside the scope of this matter, Ms. Kozak's second objection was overruled. This order follows full briefing and oral argument.

**ANALYSIS**

This order addresses the outstanding motions for class settlement and attorney's fees in order.

1. **FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT.**

Plaintiff moves for final approval of the proposed class settlement (Dkt. No. 257). Defendants have filed a statement of non-opposition (Dkt. No. 258).

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." When a proposed settlement agreement is presented, the court must perform two tasks: (1) direct notice in a reasonable manner to all class members who would be bound by the proposal, and (2) approve the settlement only after a hearing and on finding that the terms of the agreement are fair, reasonable, and adequate. FRCP 23(e)(1)–(2). "The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 623 (9th Cir. 1982).

   A.  **Adequacy of Notice.**

For class notice of settlement to be adequate, it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). It must also "describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).

The undersigned judge previously approved the form, content, and planned distribution of the class notice. Revisions to the proposed class notice were ordered at the hearing granting preliminary approval of class settlement, and a subsequent order issued prescribing further revisions before ultimately approving the class notice (Dkt. Nos. 248, 250, 251). The settlement administrator asserts that the approved class notice of settlement was mailed to all 28 class members on August 10, 2023, all of which were delivered. The 23 class members

1  with an email address on file were also emailed the class notice on August 10, 2023. A class

2  notice regarding a change in the final settlement approval hearing date was also mailed and

3  delivered to all 28 class members (Baessler Decl. ¶¶ 9–16).

4      The settlement administrator has fulfilled the notice plan given the foregoing. This order

5  accordingly finds that notice to class members was adequate. Additionally, class counsel is

6  ordered to submit a report to this court by **JANUARY 31, 2024**, detailing any efforts made to

7  inform the class of the settlement and encouraging all class members to avail themselves of it.

### B.  Fairness of Settlement.

    To determine whether a proposed class settlement is fair, reasonable, and adequate, a district court may consider what is known as the *Churchill* factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). That list is not exhaustive, as "[t]he factors in a court's fairness assessment will naturally vary from case to case." *Ibid.*

    Experienced class counsel asserts that plaintiffs have a strong case, given that the state of the law for showing a treatment is unproven means that "United would have been hard pressed to carry the heavy burden framed by this Court's summary judgment ruling" (Approval Br. 6, Dkt. No. 257 (citing *Wise v. MAXIMUS Fed. Servs., Inc.*, 478 F. Supp. 3d 873, 888 (N.D. Cal. 2020) (Judge Lucy H. Koh))). This action teetered on the edge of a bench trial twice before obtaining a preliminary approval of settlement, so this settlement avoids the risks and expenses of trial while reflecting a developed litigation record.

    Ultimately, the settlement grants all 28 class members the relief requested in the complaint: the settlement covers lipedema surgery for all class members under the terms of current or past United plans, depending on whether class member still have United coverage.

4

While class counsel represents that "the reaction of the Class Members has been overwhelmingly positive," two objections from the class members have been received (Approval Br. 12). Class member Marianne Klaczynzki submitted an objection by the deadline to do so, October 20, 2023 (Baessler Decl. ¶ 26). Her objection appears to be targeted at seeking redress outside the scope of our certified class. For example, multiple objections target United's current policies on lipedema and how they should be changed (Baessler Decl. Exh. D ¶¶ 3–5). But class members' claims being subject to reevaluation under United's current policies was explicitly disapproved of when this district court rejected prior settlement proposals. 2021 WL 5359428, at *1. Class members under the current settlement are entitled to coverage irrespective of what United's current lipedema policies are:

> A Class Member will be eligible to receive coverage for previously denied liposuction services as set forth in this Agreement upon re-review if (i) she had coverage under her plan at the time of the original denial, (ii) her surgeon verifies that the request is for medically necessary liposuction to treat lipedema, and (iii) the liposuction for lipedema will be provided in an in-network or out-of-network setting (e.g., a hospital or ancillary facility in the United States) as covered under her plan.

(Settlement Agreement 10–11, Dkt. No. 233-2). Furthermore, the objection attaches declarations from several people identified as current or former members of United plans, none of whom are the 28 class members (Baessler Decl. ¶ 27). Tellingly, those declarations air grievances over United's coverage of lipedema, despite the fact that the class settlement covers class members' lipedema surgery irrespective of United's policies (Baessler Decl. Exh. D). Ms. Klaczynzki moreover allowed Karie Kozak to appear on her behalf at the final approval hearing. As Ms. Kozak explained at the hearing, she runs coverlipedema.com, which helps advocate for coverage for lipedema surgery (Barrio Decl. ¶¶ 3–5, Dkt. No. 257-1).

Ms. Klaczynzki also objects that:

> Retired class members, who after being denied by UHC, did not have the money to pay cash for surgery and now do not have access in their area to UHC Medicare Advantage plans or now have regular Medicare for other conditions . . . should

5

> receive a cash settlement based in FAIR health non-network rates to proceed with surgery.

(Baessler Decl. Exh. D ¶ 1). The settlement at hand automatically covers expenses for lipedema surgery under the original cost-share plan for all class members who were enrolled in a United plan during the class period (Settlement Agreement 8–11). The objection could mean, however, that certain class members can no longer afford their portion of cost-sharing, and therefore are forced to forgo lipedema surgery altogether. While this order sympathizes, a class member's current financial situation remains outside the scope of the certified class. The ability to pay the cost-share under a United plan in the first place is outside the scope of this lawsuit, which was to have lipedema surgery covered under United plans. If those class members suffered financial hardship *because* of uncovered lipedema surgery paid for out of pocket, the settlement explicitly reimburses such expenditures pursuant to cost-sharing (Settlement Agreement 8). In any event, the objection does not assert that this concern applies to any of our 28 class members, nor did any of them opt out of this settlement including Ms. Klaczynzki herself, so it remains unclear to whom this concern is directed.

The objection that the Special Master should oversee potential re-submission requests because class counsel stands to profit from their obligation to do so is without merit. This order makes clear that class counsel's attorney's fees are as laid out in this order, and not contingent upon processing of re-submission requests. Specifically, class counsel shall not receive the full fee amount until the conclusion of the reimbursement and reprocessing phase and all claims have been processed.

The settlement administrator also received a late objection from class member Velma Leggett, postmarked October 21, 2023 (Baessler Decl. ¶ 28). That objection is substantively identical to that of Ms. Klaczynzki, and includes the same declarations from parties who are not class members (*see* Baessler Decl. Exh. E). Ms. Kozak likewise spoke on Ms. Leggett's behalf at the final approval hearing and voiced concern regarding how United will review requests for lipedema surgery coverage by those who do not currently have United insurance but are otherwise covered under the settlement. Ms. Kozak also raised concern for treatments

that may be needed after lipedema surgery but may or may not be covered under United insurance.

This order finds the objections to the settlement misplaced and therefore unavailing. A sticking point in rejecting prior settlements was that the scope of the release should be limited to the claims asserted in this action. The settlement agreement's release does not apply to any class member that does not receive a reimbursement or coverage, nor to future, additional requests for coverage for lipedema surgery (Settlement Agreement 13). This settlement is not the proper vehicle to address other grievances with United's coverage of lipedema, and class members themselves are not precluded from pursuing claims not asserted here.

Distinct from the eight *Churchill* factors, Rule 23(e)(2) requires "scrutinizing the fee arrangement for potential collusion or unfairness to the class" by an approving district court, among other considerations. *Briseño v. Henderson*, 998 F.3d 1014, 1025–26 (9th Cir. 2021). The first proposed settlement was rejected for precisely those reasons. 2021 WL 5359428, at *1. This settlement was approved in part because there was no contingent fee arrangement and prior concerns had been addressed. Given the foregoing, this order finds that the proposed class settlement is fair, reasonable, and adequate under FRCP 23(e). Plaintiff's motion for final approval of class settlement is **GRANTED**.

2. **ATTORNEY'S FEES AND COSTS.**

A district court must ensure that attorney's fees are "fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003) (quoting Rule 23(e)). Class counsel seeks fees under the ERISA statute's fee-shifting provision, which states: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has held that this provision means "a court 'in its discretion' may award fees and costs 'to either party,' . . . as long as the fee claimant has achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).

Our court of appeals "has adopted the hybrid lodestar/multiplier approach used by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), as the proper method for determining the amount of attorney's fees in ERISA actions." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citations omitted). "First, a court determines the 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. . . . Second, a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Ibid.* (citations omitted).

> Though the lodestar figure is "presumptively reasonable," . . . the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941–42. "Foremost among these considerations, however, is the benefit obtained for the class." *Ibid.*

Class counsel seeks $1,005,170.62 in attorney's fees. The accompanying declaration explains that a total of 1,909.1 hours were spent on this action, and both the allocation of hours spent and the billing rates of the four lawyers that worked on this action do not seem unreasonable (Davis Decl. 8–10). Class counsel thus calculated a lodestar of $1,340,227.50, which they then discounted by 25% to arrive at their fee request.

United's objections to class counsel's fee request are grounded in prior rejected proposed settlements. United explains that the current request is $250,000 more than the arrangement provided for in the first rejected settlement. United also argues that the fee request is disproportionate to the benefit conferred upon the class, citing reimbursement caps from prior-rejected settlements and estimates of what coverage payouts would be under the current settlement agreement. United argues that because it made "significant concessions" to settle, class counsel should likewise do so by having their requested fees reduced. United finally attacks class counsel's fee request for insufficient evidence and for the hours spent to be

8

excessive such that they are unreasonable, specifically asserting that "[t]here was no reason for Plaintiff's counsel to spend nearly 400 hours and to incur $250,000 in fees preparing for a bench trial that was likely to last only a few days . . . on the verge of being finally settled for a third time" (Fees Opp. 3–12, Dkt. No. 255).

United's objections are largely without merit. Prior proposed settlements were rejected, and thus reference to any fee arrangements at the time — which were inappropriate in the first place — are irrelevant here. Class counsel submits that 128.8 hours were spent on settlement, while 381.5 hours were spent on trial preparation, representing 6.7% and 20% of total attorney time spent on this case, respectively (*ibid.*). Each time a proposed settlement was rejected, it was not until trial was rescheduled and imminent that a new settlement was proposed (Dkt. Nos. 221, 231). This order will not speculate on the dynamics of settlement negotiations, which side was more responsible for such delay, or the degree of concessions made to arrive at settlement. Attorney time preparing for trial does not appear unreasonable given the proximity to trial when the current settlement was achieved, and class counsel's 25% discount nevertheless assuages such concerns.

However, the lodestar amount is due for a downward adjustment. The settlement requires the 28 class members to submit claims to United, including those who have not gotten lipedema surgery. Purportedly, these renewed applications for coverage of surgery will be approved, but until those surgeries actually happen and United pays, no benefit will have been received by such class members. Likewise, for class members who have already had lipedema surgery and now must submit reimbursement claims, until those checks are cashed no benefit will have been received. The settlement agreement contemplates that claims will be paid "within 60 days of receiving the claim, *unless United needs additional information*" (Settlement Agreement 4.C, Dkt. No. 233-2 (emphasis added)). Class representative Mary Caldwell has been fighting United over her claim since 2017. There is no telling how much longer she may have to wait under the terms of the settlement.

Class counsel also asserts that "[a]s a direct result of this litigation, United eliminated its 'Unproven' coverage position on Lipedema Surgery from its Omnibus medical policy and no

9

longer denies Lipedema Surgery as 'unproven'" (Davis Decl. ¶ 32). Of course, even if the "hundreds of covered surgeries over the next five years, that would otherwise have been denied as unproven" are attributable to this litigation, those are not benefits the class members here, who number only 28 (*ibid.*). And just because United no longer outright denies such claims as "unproven" does not mean it is now automatically covering all lipedema surgery.

"[T]he Supreme Court has instructed district courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained,'" and to evaluate factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941–42 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). This action involved a closed universe of 28 class members, for which the law places the burden on United to prove that the treatment in question is unproven. *See Caldwell*, No. C 19-02861 WHA, 2021 WL 275467, at *4 (N.D. Cal. Jan. 27, 2021). Class counsel does not assert that this action was particularly complex, nor that it contained novel issues or was unique within ERISA litigation. Class members must still wrangle with United through a claims process without guarantee of full reimbursement. A further 50% discount is thus warranted to the lodestar amount, which results in $670,113.75 in fees.

As this settlement provides no cash to the class, attorney's fees will only be awarded insofar as a benefit has been conferred to the class. To that end, this order awards class counsel $100,000 at this time but permits class counsel to seek additional fees in about a year. This court will wait and see if class members avail themselves of the settlement and will then adjust attorney's fees upon a finding that some additional benefit has been conferred to the class. Class counsel should therefore file a motion by **NOVEMBER 5, 2024**, which explains the extent to which class members availed themselves of this settlement in order to justify an award of additional attorney's fees.

Class counsel also seeks $125,677.96 in costs, which includes (among other things) fees for plaintiffs' expert and the class administrator, deposition costs, and travel costs for depositions. These expenses were all reasonable and necessary to the litigation, and are of a

type customarily billed to a fee-paying client. There have been no objections from class members to recovery of the requested fees and costs.

In light of the foregoing, to the extent stated above, plaintiffs' motion for attorney's fees is **GRANTED IN PART AND DENIED IN PART**. Class counsel is **AWARDED** $100,000 in attorney's fees and $125,677.96 in costs for a total of **$225,677.96** at this time. Class counsel may file a motion for this court to adjust attorney's fees by **NOVEMBER 5, 2024** by explaining how many of the 28 class members have either obtained reimbursement or have had lipedema surgery approved for coverage and scheduled.

## CONCLUSION

For the reasons stated above, final approval of the proposed class settlement is **GRANTED**. The request for an award of attorney's fees and costs is **GRANTED IN PART AND DENIED IN PART**. Payment of $225,677.96 shall be made by United within 28 days of this order. Judgment will be entered accordingly.

In addition, class counsel are ordered to submit a report to this court by **JANUARY 31, 2024**, explaining their efforts to notify class members of the settlement. Class counsel are also ordered to submit a report to this court by **NOVEMBER 5, 2024**, explaining how many out of the 28 class members have availed themselves of the settlement in order for this court to award additional attorney's fees.

Both sides are ordered to appear in person on **DECEMBER 5, 2024, AT 11:00AM** for a status conference.

**IT IS SO ORDERED.**

Dated: December 22, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11